IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII PACIFIC CINEMA DEVELOPMENT FOUNDATION and UNITY HOUSE, INCORPORATED,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>BEACON EDGE PICTURES, LLC., BEACON EDGE PICTURES, GAYLE DICKIE,<br><br>　　　　Defendants. | CIVIL NO. CV 04-00510<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

## MEMORANDUM IN SUPPORT OF MOTION

**I.   BACKGROUND**

In or about April and May, 2003, Defendant GAYLE DICKIE ("DICKIE"), on behalf of herself, BEACON EDGE PICTURES, LLC. ("BEACON") and BEACON EDGE PICTURES ("BEP") (collectively "Defendants"), by telephone calls and facsimile transmissions from California to Hawaii, made various representations to Plaintiffs HAWAII PACIFIC CINEMA DEVELOPMENT FOUNDATION ("HPCDF") and UNITY HOUSE, INCORPORATED ("UHI") (collectively "Plaintiffs") that she, BEACON and BEP could obtain several million dollars (U.S.) to fund, distribute, and produce two motion pictures described as "The Hawaiian Legends of Heavenly Road" and "Half-Pipe (Hawaii)."

On May 9, 2004, DICKIE, on behalf of BEACON and BEP, executed a letter agreement (the "May 9th Agreement")[1] which was sent by facsimile transmission from California to Hawaii

---

[1] A true and correct copy of the May 9th Agreement is attached to Declaration of Anthony Pounders (the "Pounders Dec.") as Exh. "A." A scanned copy (received via e-mail) of the Pounders Dec. is attached hereto. The original Pounders Dec. will be filed with the Court upon receipt of same.

in which BEACON through its investment manager, Nicklaus Alcaro, agreeing to deposit Ten Million Dollars into a BEACON or BEP account, provided that HPCDF and UHI deposited One Million Dollars into a BEACON business account. Defendant DICKIE, on behalf of herself and BEACON, promised that these funds would be used for the production of "The Hawaii Legends of Heavenly Road" and "Half-Pipe II (Hawaii)." The May 9th Agreement provided that the One Million Dollars from Plaintiffs would only be withdrawn after the deposit by BEACON of Two Million Five Hundred Thousand Dollars.

On May 10, 2003, representatives of HPCDF and UHI in Hawaii executed the May 9th Agreement based upon the written representations contained therein and the oral representations of DICKIE. The executed May 9th Agreement was signed by Plaintiffs in Hawaii and mailed to California. Pounders Dec. Exh. "A."

Upon information and belief, on May 9, 2003, DICKIE, individually and on behalf of BEACON and BEP, made representations to HPCDF and UHI in order to induce them to participate in the project and to enter into an agreement.

On or about May 11 to May 16, 2003, DICKIE, individually and on behalf of BEACON and BEP, had various discussions by telephone and in person in Hawaii and California with representatives of HPCDF and UHI and made various representations in an effort to modify the May 9th Agreement. On May 16, 2003, DICKIE, individually and on behalf of BEACON and BEP, prepared and executed a second letter agreement with HPCDF and UHI (the "May 16th Agreement"), stating, among other things, that One Million Dollars would be deposited into a BEACON business account at Citibank located at 1505 Montana Avenue, Santa Monica, California, 90403, (the "Trust Account"), and would only be utilized upon the funding of the Trust Account by BEACON and/or BEP. A copy of the May 16th Agreement is attached to the Pounders Dec. as Exh. "B."

2

On May 16, 2003, HPCDF and UHI jointly funded the above-named account, by wiring One Million Dollars from their Hawaii bank into the Trust Account. A copy of the May 16, 2003 wire transfer is attached to the Brown Dec. as Exh. "E."

On May 30, 2003, DICKIE, individually and on behalf of BEACON and BEP, prepared Minutes of a May 30, 2003, meeting and a resolution which provided, in part, that funds from HPCDF and/or UHI would only be removed from the Trust Account, if, and only if, BEACON and/or BEP first funded the Trust Account with Two Million Five Hundred Thousand Dollars. It was also agreed that if the Two Million Five Hundred Thousand Dollars was not funded by Defendants, the One Million Dollars deposited by Plaintiffs would be returned in full to HPCDF and/or UHI. Copies of these minutes are attached to the Pounders Dec. as Exh. "C."

Defendants were obligated to deposit Two Million Five Hundred Thousand Dollars in the Trust account by May 30, 2003. Defendants never met this obligation. Defendants were, therefore, in breach of their agreements with Plaintiffs. Although Defendants were obligated to return the One Million Dollars to Plaintiffs, $250,000 was not returned and remains outstanding. Attached to the Pounders Dec. as Exh. "D" is a copy of a letter from UHI's then general counsel, Randall Harakal, in which Mr. Harakal demands the return of the monies owed to Plaintiffs. By obtaining DICKIE's bank records, Plaintiffs have uncovered evidence that DICKIE actually withdrew Plaintiffs' funds for her own personal use. For example, on November 2, 2003 DICKIE wire transferred $8,000 from the Trust Account to a foreign bank account. On November 5, 2003 DICKIE withdrew $2,000 from the Trust Account. On November 17, 2003 DICKIE wire transferred another $8,000 from the Trust Account to a foreign bank account. On November 26, 2003 Defendant DICKIE wire transferred $150,000 from the Trust Account to her own personal account with Washington Mutual Bank (the "Personal Account"). Copies of

3

relevant bank statements from Citibank and Washington Mutual Bank are attached to the Brown Dec. as Exhs. "F" and "H."

Plaintiffs have also obtained the bank records from DICKIES' Personal Account. On November 28, 2003, DICKIE withdrew $14,970 from her Personal Account. On December 2, 2003 DICKIE wire transferred $9,000 from her Personal Account to a foreign bank account. Brown Dec. Exh. "G." On December 8, 2003 DICKIE withdrew $9,000 from her Personal Account. Brown Dec. Exh. ""H." On December 10, 2003 DICKIE wire transferred $8,960 from her Personal Account to a foreign bank account. Brown Dec. Exh. "G." Bank statements from DICKIE's Personal Account reveal that over time DICKIE spent Plaintiffs' funds for her own personal use on vendors including Victoria's Secret, Arco, various restaurants, Harrod's International, Luxair Ticketing, Hotel Du Parc (Luxemborg), Best Buy, Budget Rent-A-Car, Hilton Hotels (Honolulu), Turtle Bay Resorts (Kahuku), Brookstone, Applestore, Good Guys, Barnes and Noble, and more. Id.

Despite requests by Plaintiffs, DICKIE, individually, and on behalf of BEACON and BEP, have failed and refused to provide any accounting for the funds improperly used and has intentionally failed and refused to repay all money improperly removed from the Trust Account.

Admittedly, Defendants have repaid Plaintiffs several Hundred Thousand Dollars. However, after repeated demands, Defendants have failed and refused to return the remaining funds owed to Plaintiffs. Defendants owe Plaintiffs Two Hundred Fifty Thousand Dollars, plus interest, attorneys' fees, and costs.

## II. JURISDICTION AND VENUE

This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between Plaintiffs and Defendants and the amount in controversy exceeds Seventy-Five Thousand dollars exclusive of costs and interest. Venue is proper under 28 U.S.C. § 1391(a)(c),

4

since the acts giving rise to the claims in the Complaint arose or occurred in this district. The Defendants, non-residents of Hawaii, are subject to the jurisdiction of this Court pursuant to Hawaii's Long Arm Statute, H.R.S. 634-35(a)(1), in that Defendants transacted business in Hawaii.

### III.   STANDARD ON DEFAULT JUDGMENT

Fed. R. Civ. P. 55(b)(2) provides that after entry of default, a party may move for default judgment upon petition to the Court. Entry of Default under Fed. R. Civ. P. 55(a) was granted on November 10, 2005, and notice given to Defendants. *See* Meadows v. Dominican Republic, 817 F.2d 517 (9th Cir. 1987); Hawaii Carpenters' Trust Fund v. Stone, 794 F.2d 508 (9th Cir. 1986).

### IV.   DEFAULT JUDGMENT ON PLAINTIFFS' COMPLAINT ALLEGATIONS OF LIABILITY

Plaintiffs seek a default judgment adjudging liability of all Defendants, jointly and severally, on each Count of the Complaint. Fed. R. Civ. P. 55.

### V.   DEFAULT JUDGMENT ON PLAINTIFF'S CLAIMS FOR ATTORNEYS' FEES AND COSTS

Plaintiffs seek recovery of attorneys' fees and costs as provided under Federal and State laws. To date, Plaintiffs have been billed and incurred fees, tax, and costs of approximately $34,203.99 and therefore seek recovery of that sum incurred to date, plus an amount of all post-judgment collection fees and costs.

### VI.   STATUTORY PREJUDGMENT INTEREST SHOULD BE AWARDED

It is within the discretion of the Court to award prejudgment interest at the rate of ten percent per annum. Eastman v. McGowan, 86 Hawaii 21, 27 (1997); H.R.S. § 478-2 ("When there is no express written contract fixing a different rate of interest, interest shall be allowed at the rate of ten percent a year . . .").

There is no interest rate fixed in the contract between Plaintiffs and Defendants. As such, Plaintiffs respectfully request that this Court award prejudgment interest at a rate of ten percent a year.

Admittedly, at this point in the case, it is difficult to determine the exact date that Defendants' breach of contract began. Therefore, for the purposes of this motion Plaintiffs respectfully request that the award of prejudgment interest, be awarded from November 26, 2003 (the day DICKIE wire transferred $150,000 from the Trust Account to her personal account with Washington Mutual Bank). Brown Dec. Exhs. "F" and "H." However, if during further discovery Plaintiffs are able to pinpoint an earlier date for the breach of contract by Defendants, Plaintiffs reserve the right to seek additional statutory prejudgment interest.

Based on the November 26, 2003 date, Plaintiffs request an award of statutory prejudgment interest in the amount of $56,249.99.

## VII.   CONCLUSION

In sum, Plaintiffs respectfully request that the Court enter Default Judgment in their favor on all claims of liability in their Complaint. Plaintiff additionally seeks Default Judgment for damages as follows:

    A.    Actual damages: $250,000.00;

    B.    Statutory pre-judgment interest: $56,249.99 as of February 28, 2006 (and thereafter at the rate of $64.36 per diem);

    C.    Attorneys' fees (and tax) incurred through February 28, 2006 of $30,935.48;[2]

    D.    Costs of suit through February 28, 2006 of $3,268.51; and

---

[2] Law Offices of Philip R. Brown - $23,931.25 (Fees), $996.98 (Tax)
Brook Hart, AAL, ALC, a law corporation- $5,767.00 (Fees), 240.25 (Tax)

6

E.  Plaintiffs also seek such other and further relief, both legal and equitable, that this Court deems just and proper under the circumstances.

DATED:  Honolulu, Hawaii, March 8, 2006.

_____
PHILIP R. BROWN
Attorney for Plaintiffs
HAWAII PACIFIC CINEMA
DEVELOPMENT FOUNDATION
AND UNITY HOUSE, INCORPORATED